IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0249

_____

FILED

**June 2, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

OSCAR ROSS COMBS, SR.,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Wyoming County
Honorable Warren R. McGraw, Judge
Criminal Action No. 15-F-56

REVERSED AND REMANDED

_____

Submitted: March 16, 2022
Filed: June 2, 2022

Timothy P. Lupardus, Esq.
Lupardus Law Office
Pineville, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Karen C. Villanueva-Matkovich, Esq.
Deputy Attorney General
Lara K. Bissett, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE BUNN did not participate in the decision in this case.

**SYLLABUS BY THE COURT**

1.      "'This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact.' Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009)." Syl. Pt. 1, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020).

2.      "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

3.      "The failure to comply with the three-term rule under W.Va. Code, 62-3-21, bars further prosecution." Syl. Pt. 2, in part, *State v. Moore*, 178 W. Va. 98, 357 S.E.2d 780 (1987).

4.      "A person charged by indictment with a felony and remanded to a court of competent jurisdiction is entitled to a speedy trial and must be tried within three regular terms of court, after the indictment is returned or be forever discharged from prosecution for the offense, unless the failure to try him was excused for the reasons stated

in W.Va. Code, 1931, 62-3-21, as amended." Syl. Pt. 1, *State ex rel. Stines v. Locke*, 159 W. Va. 292, 220 S.E.2d 443 (1975).

5.     "'Under the provisions of [West Virginia] Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned[.]' Syl. Pt. 1[, in part], *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972)." Syl. Pt. 5, in part, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020).

6.     "Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of [West Virginia] Code, 62-3-21, as amended." Syl. Pt. 2, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).

7.     "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va. R. Evid. 404(b)." Syl. Pt. 1, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

8.     "When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose.  It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b).  The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction."  Syl. Pt. 1, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

9.     "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility.  Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the

iii

limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syl. Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

**HUTCHISON, Chief Justice:**

The petitioner, Oscar Ross Combs, Sr., was convicted of first-degree murder in the Circuit Court of Wyoming County on September 29, 2017, and he was sentenced to life in prison without mercy by order entered on April 11, 2018. The petitioner appealed his conviction to this Court in 2018 asserting the following assignments of error: (1) improper admission of Rule 404(b) evidence;[1] (2) improper instruction to the jury on prior bad acts; (3) improper admission of evidence showing that the petitioner refused a polygraph examination; (4) the cumulative effect of errors one through three rendered the trial unfair; (5) the chain of custody was broken and any evidence relying upon that chain should have been excluded; (6) violation of his constitutional right to a speedy trial; and (7) insufficiency of the evidence to support the conviction. Upon review, we found that

---

[1] Rule 404(b) of the West Virginia Rules of Evidence provides:

> Crimes, Wrongs, or Other Acts.
> (1) *Prohibited uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) *Permitted uses; notice required*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:
> (A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and
> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

the appendix record submitted with the appeal was incomplete and did not allow for a determination of whether the petitioner's right to a speedy trial had been violated. Accordingly, by memorandum decision entered on May 22, 2020, we remanded the case with directions for the circuit court to conduct a hearing to determine the reasons for the delay in commencing the petitioner's trial. *State v. Combs*, No. 18-0445, 2020 WL 2614649 (W. Va. May 22, 2020) (memorandum decision). Upon remand, the circuit court held a hearing and then entered an order on February 24, 2021, finding that all continuances that were granted prior to the petitioner's trial, with one exception, had been agreed upon by the parties, and, therefore, the petitioner's right to a speedy trial was not violated.

In this appeal, the petitioner continues to maintain that he was denied a speedy trial, arguing that the circuit court's ruling upon remand was error. He also reasserts his assignments of error pertaining to his trial as set forth in his 2018 petition for appeal.[2] Having considered the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we find that the petitioner was afforded a speedy trial, but the circuit court erred in its determination that evidence regarding the petitioner's conviction for another murder was admissible at his trial pursuant to Rule 404(b) of the

---

[2] The petitioner does not reassert his assignment of error regarding an alleged break in the chain of custody of evidence submitted at trial. In the petitioner's initial appeal filed in 2018, we deemed this assignment of error waived because of the lack of argument in the petitioner's brief to support it. *See Combs*, No. 18-0445, at *1, note 1.

West Virginia Rules of Evidence. Accordingly, we reverse the petitioner's conviction and sentencing orders and remand this case for a new trial.

## I. Facts and Procedural Background

The victim, Teresa Ford, disappeared on May 13, 2013. On that day, Ms. Ford told a friend, William Cottle, that she was going to meet the petitioner to sell him her van. The next day, the petitioner told Mr. Cottle that Ms. Ford had "left town in a red car." In the days immediately following Ms. Ford's disappearance, the petitioner was observed driving her van. He later sold the vehicle to a used car dealer.

Several weeks after Ms. Ford's disappearance, the petitioner was interviewed by law enforcement. Prior to the interview, the petitioner had offered to take a polygraph examination, but after a disagreement with someone at the testing center, he left and never took the test. In the petitioner's recorded interview with the police, he mentioned the fact that he had offered to take a polygraph test shortly after Ms. Ford disappeared. The petitioner also told the police during that interview that Ms. Ford had spent the night with him before selling him her van and that she left town the next day.[3]

Later in 2013, the petitioner became a suspect in the robbery and homicide of James Butler in Mercer County. Based on information provided by the petitioner's son,

---

[3] According to the petitioner, he and Ms. Ford were dating before she disappeared.

3

Oscar Ross Combs, Jr. ("Junior"), the police executed a search warrant on the petitioner's home on November 11, 2013. During their search, the police discovered a large blood stain on the petitioner's mattress. Subsequent forensic testing determined that the blood belonged to Ms. Ford. On the day the police executed the search warrant, they also interviewed the petitioner again, and he confessed that he and Junior had robbed and killed Mr. Butler.

In April 2014, the police obtained another warrant to conduct a broader search of the petitioner's home and the surrounding property. During this search, skeletal remains were discovered in a shallow grave. The remains were later identified as those of Ms. Ford.

In February 2015, the petitioner was tried and convicted in Mercer County of first-degree murder, first-degree robbery, and conspiracy for his role in killing Mr. Butler. The petitioner is serving a sentence of life without mercy plus eighty years for his convictions arising out of Mr. Butler's murder. *See State v. Combs*, No. 15-0405, 2016 WL 3304115 (W.Va. June 8, 2016) (memorandum decision) (affirming petitioner's convictions in Mercer County).

The petitioner was indicted for the murder of Ms. Ford on May 4, 2015, and his trial began on September 18, 2017. During the petitioner's nine-day trial, the State was allowed to introduce evidence pursuant to Rule 404(b) of the Rules of Evidence regarding

4

his convictions for the first-degree robbery and murder of Mr. Butler. Specifically, the trial court allowed the petitioner's Mercer County conviction order to be read to the jury and permitted three witnesses, including Junior, to testify about the facts surrounding Mr. Butler's murder. In addition, the State played the petitioner's recorded statement to the police for the jury, during which he indicated that he was going to take a polygraph and then changed his mind. Although forty witnesses testified on behalf of the State, the exact cause of Ms. Ford's death was never established due to the condition of her remains. At the end of trial, the petitioner was convicted by the jury of first-degree murder without a recommendation of mercy.

## II.  Standard of Review

The petitioner first argues that his prosecution was barred because he was not afforded a speedy trial, and, therefore, his indictment should have been dismissed.

> "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact." Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

Syl. Pt. 1, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020).

The petitioner's other assignments of error pertain to his trial. Upon review, we have determined that the only assignment of error necessary for us to consider is the petitioner's assertion that the circuit court erred by allowing the State to admit evidence at

5

trial under Rule 404(b) of the Rules of Evidence.  It is well-established that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard."  Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).  When Rule 404(b) evidence is at issue, we employ a specific three-step analysis.  As this Court has previously explained:

> "[T]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis.  First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred.  Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose.  Third, we review for an abuse of discretion the trial court's conclusion that the 'other acts' evidence is more probative than prejudicial under Rule 403." *State v. Jonathan B.*, 230 W.Va. 229, 236, 737 S.E.2d 257, 264 (2012) (quoting *State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996)).

*State v. Timothy C.*, 237 W. Va. 435, 443, 787 S.E.2d 888, 896 (2016).  With these standards in mind, we consider the petitioner's assignments of error.

### III.  Discussion

The petitioner first contends that he was denied a speedy trial because he was indicted for Ms. Ford's murder in May 2015, but was not given a trial until September 2017, which was seven terms of court later.  West Virginia Code § 62-3-21 (1959) provides:

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms

6

of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

This Court has recognized that this statute "is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of U.S. Const., amend. VI and W.Va. Const., art. III, § 14." Syl. Pt. 1, in part, *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981). Therefore, "[t]he failure to comply with the three-term rule under W.Va. Code, 62-3-21, bars further prosecution." Syl. Pt. 2, in part, *State v. Moore*, 178 W. Va. 98, 357 S.E.2d 780 (1987). As we have explained:

> [a] person charged by indictment with a felony and remanded to a court of competent jurisdiction is entitled to a speedy trial and must be tried within three regular terms of court, after the indictment is returned or be forever discharged from prosecution for the offense, unless the failure to try him was excused for the reasons stated in W.Va. Code, 1931, 62-3-21, as amended.

Syl. Pt. 1, *State ex rel. Stines v. Locke*, 159 W. Va. 292, 220 S.E.2d 443 (1975).

7

In Wyoming County, there are three terms of court each year, and they commence on the first Monday in February, May, and October. W. Va. Trial Ct. R. 2.27. "'Under the provisions of [West Virginia] Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned[.]' Syl. Pt. 1[, in part], *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972)." *Holden*, 243 W. Va. at 276, 843 S.E.2d at 529, syl. pt. 5, in part. In other words, the term in which the indictment is returned does not count for purposes of the three-term rule. In addition, a term in which a continuance is requested by the accused does not count for purposes of the three-term rule. As syllabus point two of *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972) provides:

> Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of [West Virginia] Code, 62-3-21, as amended.

Likewise, when the trial is continued to another term by an agreement of the parties, it does not count as an unexcused term for purposes of the three-term rule. *Good v. Hanlan*, 176 W. Va. 145, 153, 342 S.E.2d 111, 118 (1986).

Here, the petitioner was indicted in May 2015, so that term of court does not count for purposes of the three-term rule. The February 2016 term does not count for purposes of the three-term rule either because the petitioner asked for a continuance during

8

that term. It is undisputed that the State asked for a continuance during the May 2016 term, which was granted over the petitioner's objection. Consequently, that term is not excused and does count for purposes of the three-term rule. In addition to the May 2016 term, the petitioner contends that three other terms of court—October 2015, October 2016, and February 2017—passed that were unexcused before he was tried during the seventh term following his indictment. Regarding those three terms, the petitioner asserts that there are no orders in the record to support the circuit court's finding that these terms were excused, and therefore, the circuit court erred when it ruled that the three-term rule was not violated. The State maintains, however, that the circuit court correctly determined at the hearing upon remand that the terms were excused because of continuances that were agreed upon by the parties.

Pursuant to this Court's May 22, 2020, memorandum decision, the circuit court held a hearing on December 14, 2020, for the purpose of ascertaining the reasons for the continued delays in commencing the petitioner's trial. As set forth in the circuit court's order, the record of the proceedings was reviewed, and it was determined that the petitioner contributed to the delays by requesting a continuance in one instance and agreeing to the other continuances without objection to moving his trial dates. The circuit court pointed out that "the reasons for the delay were significant and necessary under the circumstances of a complex 404(b) motion involving bringing up the prior Mercer Co[unty] convictions of First[-]Degree Murder and Robbery."

9

Upon review, the record indicates that the State first gave notice of its intent to use evidence at petitioner's trial pursuant to Rule 404(b) on March 24, 2016. A second notice and motion to use evidence at petitioner's trial pursuant to Rule 404(b), with a listing of the specific evidence the State intended to introduce, was filed by the prosecutor on April 2, 2017. A hearing on the motion was then held on April 3, 2017. The hearing was not completed on that day and by agreement of the parties was continued to July 17, 2017. At the beginning of the July 2017 hearing, the parties reminded the court of the status of the case, noting that at the prior hearing Corporal Reed of the State Police was testifying when "the Court, on joint motions, continued the matter before the cross-examination of Corporal Reed in order have the Clerk brought forth from Mercer County to appear and present a certified copy of the conviction of the defendant in Mercer County." Notably, the petitioner then asked for a continuance of the July 2017 hearing because he purportedly had not been given sufficient notice of the hearing to allow him to request permission from the facility where he was incarcerated to bring his personal documents pertaining to his Mercer County convictions with him. Although the Circuit Clerk of Mercer County was permitted to testify during the July 2017 hearing, the matter was continued again until August 4, 2017, at which time the State presented additional evidence and the circuit court ruled that the 404(b) evidence could be admitted at the petitioner's trial.

Having carefully considered the record of the proceedings that occurred regarding the State's motion to use 404(b) evidence at the petitioner's trial, we find that the circuit court did not err when it determined that continuances were granted during the

10

October 2016 and February 2017 terms of court by agreement of the parties so that the hearing regarding the State's motion to use the Rule 404(b) evidence could be held. During this time, the parties appeared before the court on multiple occasions to complete the hearing on the State's 404(b) motion and agreed to continuances until the circuit court finally issued its ruling in August 2017. Thus, the circuit court's determination that the October 2016 and February 2017 terms of court were excused for purposes of the three-term rule was not error.

As for the October 2015 term of court, we agree with the petitioner that the record is devoid of any explanation as to why the petitioner's trial was continued at that time. This was the first term of court following the petitioner's indictment and, undoubtedly, neither party was yet prepared for the trial as the record shows that discovery was ongoing. Nonetheless, as the petitioner correctly argues, our case law holds that a court speaks through its record and that agreements to continue a trial must be memorialized at the time of such agreement for a term of court to be excused for purposes of the three-term rule. *State v. Underwood,* 130 W. Va. 166, 43 S.E.2d 61 (1947). However, the fact that the October 2015 term of court is unexcused does not afford the petitioner the relief he seeks.

The finding that the October 2016 and February 2017 terms were excused is determinative of the petitioner's claim that the three-term ruled was violated. Even though the October 2015 term is unexcused as well as the May 2016 term (the only term of court

11

that the State received a continuance over the petitioner's objection), the remaining terms have been determined to fall within the exceptions enumerated in the statute. *See State v. Paul C.*, 244 W. Va. 329, 338, 853 S.E.2d 569, 576 (2020) ("In reviewing the three terms of court at issue, we need look no further than the March 2018 term of court, which we easily conclude was excused and, if we assume that the remaining two terms (the June and October 2017 terms) were unexcused, is determinative that the three-term rule was not violated."). Simply stated, the petitioner argued that there were four terms of court that were unexcused for purposes of the three-term rule. The record shows that two of those terms were excused by the parties' agreement to continuances to allow the circuit court to conduct a hearing and rule upon the State's motion to use evidence at trial pursuant to Rule 404(b). Because only two terms of court were unexcused, the circuit court did not err in its determination that the three-term rule was not violated.

Having found no merit to petitioner's claim that he was denied a speedy trial, we now consider his assignments of error pertaining to his trial. As indicated above, we find that the petitioner's assignment of error concerning the circuit court's admission of the 404(b) evidence is dispositive and requires us to reverse his conviction and remand for a new trial.

This Court has observed that "Rule 404(b) begins by restating the exclusionary principle of Rule 404(a) that evidence of crimes, wrongs, or acts is inadmissible to prove that a person acted in conformity therewith on a particular occasion."

12

*State v. McGinnis*, 193 W. Va. 147, 153–154, 455 S.E.2d 516, 522–523 (1994). Rule 404(b) then "expressly permits the introduction of specific acts in the nature of crimes, wrongs, or acts to prove purposes other than character, including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *McGinnis*, 193 W. Va. at 154, 455 S.E.2d at 523. As summarized in syllabus point one of *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va. R. Evid. 404(b).

In *McGinnis*, this Court outlined the criteria for admission of evidence at trial under Rule 404(b). First, the State must identify the specific purpose for which it seeks admission of the evidence. As syllabus point one of *McGinnis* explains:

> When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

*McGinnis*, 193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 1. Syllabus point two of *McGinnis* sets forth the steps the trial court must take when a party moves to admit evidence at trial under Rule 404(b), instructing that:

[w]here an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W. Va. at 151, 455 S.E.2d at 520, syl. pt. 2.

The petitioner argues that the circuit court's admission of the 404(b) evidence at his trial was erroneous for several reasons. First, he contends that there was no similarity between Mr. Butler's murder and the murder of the victim in this case to permit the evidence to be introduced for the State's specified purpose of proving his *modus operandi*. Next, he argues that the circuit court failed to conduct an analysis under Rule 403 of the

14

Rules of Evidence[4] as required by *McGinnis*. Finally, he contends that the circuit court never actually admitted the evidence for a specific purpose, but rather erroneously instructed the jury that his criminal history showed proof of premeditation and malice.[5]

As set forth above, when reviewing whether the 404(b) evidence was properly admitted at trial, we utilize a three-step analysis that begins with a determination of whether the circuit court clearly erred in its factual determination that there was sufficient evidence to show that the other acts occurred. *Timothy C.*, 237 W. Va. at 443, 787 S.E.2d at 896. In this instance, the evidence of other acts, i.e., other crimes, sought to be admitted was the petitioner's commission of first-degree robbery and murder in Mercer County. Inasmuch as the petitioner had already been convicted of these crimes at the time of his trial in this case, the circuit court's determination that these other acts occurred was obviously not clearly wrong.

The second step in our review requires us to determine whether the trial court correctly found that the evidence was admissible for a legitimate purpose. *Id.* During the hearings on the State's motion to admit evidence under 404(b), the State indicated that its

---

[4] Rule 403 of the West Virginia Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[5] Although the petitioner made the circuit court's instructions a separate assignment of error in his brief, we consider his argument as part of the Rule 404(b) analysis.

purpose for admitting the evidence was to show a "pattern of *modus operandi*." At the August 4, 2017, hearing, the prosecutor stated:

> What the State is alleging here, and I've tried to demonstrate that, based on the testimony of the witness provided, that the murder of [James] Butler was done for the purpose of robbery. We will also try to show that Teresa Ford, her purpose was sale [sic] of the van, and in the end there's no transaction ever [sic] took place. So[,] the jury can return if she was killed based on the fact that the intent here which was same as this in Mercer County, the same pattern of modus operandi, which 404 does allow.
>
> \* \* \* \*
>
> I think that's where we are. Modus operandi in Mercer County, murder/robbery; modus operandi, a potential murder and robbery here in Wyoming County. The same thing[.]

"This court has recognized 'the theory that where a defendant commits a series of crimes which bear a unique pattern such that the *modus operandi* is so unusual it becomes like a signature, then evidence of other crimes may be admissible.'" *State v. McFarland*, 228 W. Va. 492, 503, 721 S.E.2d 62, 73 (2011), quoting *State v. Dolin*, 176 W. Va. 688, 698 n.14, 347 S.E.2d 208, 218 n.14 (1986). While the petitioner acknowledges that establishing a *modus operandi* is a specific and legitimate purpose for admission of evidence under Rule 404(b), he argues that that there was nothing about the murder of Mr. Butler that "would mark the acts as being so similar as to merit admission for such use here." In that regard, he points out that the murder of Mr. Butler was completed with an accomplice, but the State did not allege that the petitioner had an accomplice in Ms. Ford's murder. Also, it was alleged at the petitioner's trial for the murder of Mr. Butler that it was

16

his son who inflicted the gunshot. In this case, the State alleged that the murder was committed by the petitioner. The petitioner also contends that there were no similarities regarding where the crimes allegedly occurred, where the victim's vehicles were eventually located; where the bodies were "disposed;" the gender of the decedent, and the motive. The manner of death was also different; while Mr. Butler was shot, the exact cause of Mr. Ford's death was never established. Finally, the petitioner notes that the murders occurred more than two years apart.

Upon review, we find that the similarity between the two murders as alleged to have occurred is tenuous at best. Generally, evidence to show an accused's method of operation comes into play when there has been more than one previous crime such that there is a clear pattern in the way the offenses are committed. Here, it appears that the State wanted to use the petitioner's prior conviction to establish its theory of the case, *i.e.*, the petitioner murdered Mr. Butler so he could steal his money, therefore, he must have murdered Ms. Ford so he could steal her van. We have found such use of a prior conviction under the guise of *modus operandi* to be improper under Rule 404(b). *See McFarland*, 228 at 503, 721 S.E.2d at 73 (finding evidence of prior conviction not admissible to show *modus operandi* where only through prior conviction was the jury able to infer the defendant's method of sexual assault).

More problematic, though, is that the record does not show that the circuit court admitted the evidence for the specific purpose of showing the petitioner's *modus*

17

*operandi*. Rather, the circuit court admitted the evidence simply because the outcome of both of the petitioner's alleged criminal acts was murder. At the end of the 404(b) hearing on August 4, 2017, the circuit court ruled that the evidence would be admissible at trial because

> [t]he [c]ourt is of the opinion that the matters relating to the Mercer County event and the Wyoming County event are sufficiently similar in nature to warrant the granting of your [404(b)] motion.
>
> The parties in the Mercer County event [referring to the Butler murder] and the Mercer County event has had its conclusion, *in both incidents exactly the same outcome and that was murder by the defendant,* according to what the State claims it can prove.
>
> The disconnect between those two events, if the defense wishes to prove the same will be permitted to do so, to demonstrate that they have no relationship; *that depravity of respect for human life is of such nature that the Court has no alternative but to grant the motion.*

(Emphasis added).

As set forth above, *McGinnis* requires that "[t]he specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction." *Id.* at 151, 455 S.E.2d at 520, syl. pt. 1, in part. Here, the circuit court found the evidence to be admissible not because it showed a *modus operandi*, but simply because it showed that the petitioner had committed another murder. "Evidence reflecting only a propensity to commit a crime is inadmissible" under Rule 404(b). *McGinnis*, 193 W. Va. at 155, 455 S.E.2d at 524.

18

The circuit court compounded the error at trial when it gave its limiting instruction to the jury prior to the admission of the 404(b) evidence. Specifically, the trial court instructed the jury as follows:

> Ladies and Gentlemen of the jury, I'm going to give you what is called "limited instruction." The State of West Virginia will be introducing 404-B evidence, conviction of crimes occurring in Mercer County, West Virginia, against the [petitioner].
>
> This evidence will not be used by the [S]tate to prove the [petitioner], is guilty of First[-]Degree murder for which he is on trial here in Wyoming County and this evidence cannot be used to show conformity to character evidence.
>
> The evidence that only will be considered as being relevant on a non-character figure and that uncharged misconduct evidence be admissible for other purposes, such as proof of motive and intent. *The criminal history of the defendant shows evidence of misconduct and motive for personal gain, proof of deliberate planning, proof of malice and premeditation.*

Not only is the instruction confusing, but the last sentence tells the jury that the evidence is being admitted because "the criminal history of the defendant shows evidence of misconduct." The admission of the evidence of the petitioner's prior convictions for that reason is exactly what Rule 404(b) prohibits. As this Court has explained,

> [t]he purpose of the rule excluding evidence in a criminal prosecution of collateral offenses is to prevent a conviction for one crime by the use of evidence tending to show that the accused engaged in other legally unconnected criminal acts, and to prevent the inference that because the accused engaged or may have engaged in other crimes previously, he was more liable to commit the crime for which he is being tried.

*State v. Harris*, 166 W.Va. 72, 76, 272 S.E.2d 471, 474 (1980).  Because the trial court did not admit the 404(b) evidence of the petitioner's convictions for robbery and murder of Mr. Butler for a specific and precise purpose[6] and then gave the jury an improper limiting instruction regarding the reason the evidence was being admitted and the manner in which it could be considered, we find that the admission of the evidence was clear error.

Although we have found the 404(b) evidence was improperly admitted, we would be remiss if we did not address the circuit court's failure to conduct an analysis of the evidence under Rule 403 of the West Virginia Rules of Evidence as required by *McGinnis*.  Indeed, under our standard of review, the last step of our analysis is an examination of the circuit court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.  *Timothy C.*, 237 W.Va. at 443, 787 S.E.2d at 896.  We have explained that

> [u]nder Rule 403, evidence of prior acts to prove the charged conduct may not be admitted simply because the extraneous conduct is relevant or because it falls within one or more of the traditional exceptions to the general exclusionary rule; to be admissible, the probative value of such evidence must outweigh risks that its admission will create substantial danger of unfair prejudice.

---

[6] In this appeal, the State abandoned its stated purpose for the admission of the 404(b) evidence—*modus operandi*—and argued that the petitioner's prior convictions were relevant for demonstrating "motive, intent, and premeditation."  We have made clear, however, that "[i]t is not sufficient for the prosecution or trial court merely to cite or mention the litany of possible uses listed in Rule 404(b)."  *McGinnis*, 193 W. Va. at 154, 455 S.E.2d at 523.

20

*McGinnis*, 193 W.Va. at 156, 455 S.E.2d at 525. Here, the circuit court completely failed to do this critical analysis. In that regard, the record shows that at the end of the State's presentation of its evidence at the 404(b) hearing, the trial court immediately ruled that the evidence would be admissible without any consideration of its potential unfair prejudicial effect. There was no discussion of Rule 403 or the potential impact the admission of the evidence of the petitioner's prior murder conviction would have at his trial in this case. We have made clear that when a trial court evaluates the admissibility of evidence under Rule 404(b) "[t]he balancing necessary under Rule 403 must affirmatively appear on the record." *McGinnis,* 193 W. Va. 156, 455 S.E.2d at 525. When the Rule 403 analysis is absent from the record, "this Court is unable to effectively review the circuit court's decision to admit the evidence in question." *McFarland*, 228 W. Va. at 503, 721 S.E.2d at 73. Thus, the circuit court's failure to conduct the balancing test required by Rule 403 also constitutes error in this case.

In sum, the circuit court's analysis of the 404(b) evidence did not satisfy the criteria established by *McGinnis* and did not support the circuit court's admissibility ruling. Moreover, the limiting instruction that was given to the jury was not effective to preclude prejudice as a result of the erroneous admission of the 404(b) evidence. We have observed that "the erroneous admission of evidence of other acts is one of the largest causes of reversal of criminal convictions" because "where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result." *McGinnis,* 193 W. Va. 153. 455 S.E.2d at 522. Such is the case here. Having carefully examined the record, it is clear that

21

the evidence of the petitioner's convictions for the robbery and murder of James Butler was a significant part of the petitioner's trial. Not only were the petitioner's prior convictions revealed to the jury, but there was extensive testimony elicited by the State from the petitioner's son, Junior, and the investigating police officer regarding the events that led to Mr. Butler's murder and culminated in the petitioner's Mercer County convictions. Undoubtedly, "the indiscriminate receipt of such evidence in volume and scope . . . predispose[d] the minds of the jurors to believe the [petitioner] guilty of the specific crime by showing him guilty or charged with other crimes." *State v. Thomas*, 157 W. Va. 640, 656, 203 S.E.2d 445, 456 (1974). Consequently, the petitioner did not receive a fair trial. Accordingly, we must reverse the petitioner's conviction, and remand this case for further proceedings.

## IV. Conclusion

For the foregoing reasons, the petitioner's conviction and sentencing orders are reversed, and this case is remanded to the circuit court for a new trial.

Reversed and remanded.

22